UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP RAY WHEELER,                         Case No. 14-12540

        Plaintiff,                      Marianne O. Battani
v.                                                       United States District Judge

COMMISSIONER OF SOCIAL                  Michael Hluchaniuk
SECURITY,                                            United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 13)**

## I.    PROCEDURAL HISTORY

    A.    Proceedings in this Court

On June 27, 2014, plaintiff filed the instant suit seeking judicial review of

the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3),  District Judge Marianne O.

Battani referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkts. 11, 13).  The

cross-motions are now ready for report and recommendation.

B.    Administrative Proceedings

Plaintiff filed the instant claim for a period of disability and disability insurance benefits on March 2, 2012.   Plaintiff also filed an application for supplemental security income benefits on the same date.   In both applications, plaintiff alleged a disability beginning January 12, 2012.  The Commissioner initially denied plaintiff's applications on May 17, 2012.  (Tr. 91-93).  Thereafter, plaintiff requested an administrative hearing, and on January 14, 2013, he appeared with counsel before Administrative Law Judge ("ALJ") Keith J. Kearney, who considered his case de novo.  (Tr. 31-67).  In a February 21, 2013 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 11-30).  The ALJ's decision became the final decision of the Commissioner on April 29, 2014, when the Social Security Administration's Appeals Council denied plaintiff's request for review.  (Tr. 1-6). Plaintiff filed this suit on June 27, 2014.  (Dkt. 1).

For the reasons set forth below, the undersigned concludes that a remand is necessary to obtain a proper medical source opinion to support the ALJ's physical residual functional capacity finding. The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 11) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 13) be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social

Security be **REVERSED** and **REMANDED** for proceedings consistent with this Report and Recommendation.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, a veteran, has past relevant work as a nurse assistant, a firefighter, a newspaper carrier, and a carpet cleaner as owner or manager.  (Tr. 25).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in any substantial gainful activity since January 12, 2012 (the alleged onset date).  (Tr. 16).  At step two, the ALJ found that plaintiff had the following severe impairments: low back and knee pain, posttraumatic stress disorder, and depression (20 CFR 404.1520(c) and 416.920(c)).  (*Id*.)  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations.  (Tr. 18).

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform:

> light work as defined in 20 CFR 404.1566(b) and 416.967(b) except the claimant requires a sit/stand option, which would allow him to sit or stand alternately at will provided that he is not off task more than 10% of the work period.  He can occasionally operate bilateral foot controls.  The claimant can frequently handle with the left upper extremity, which is non-dominant.  He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders and

3

> scaffold.  He requires a cane for ambulation over
> distances.  The claimant must avoid vibrations and
> hazards, such as heights and machinery but would be
> able to avoid ordinary workplace hazards.  He can hear
> and understand simple, oral instructions and can
> communicate simple information.  The claimant can
> perform simple, routine, and repetitive tasks.  The
> claimant can have occasional interaction with
> supervisors and coworkers but can have no interaction
> with the public.

(Tr. 20).  At step four, the ALJ determined that plaintiff was not capable of

performing his past relevant work.  (Tr. 25).  The ALJ concluded that the

"environmental demands and/or exertional level of the claimant's past relevant

work exceed the claimant's residual functional capacity as assessed []." (*Id*.)  The

ALJ, however, concluded that jobs existed in significant numbers in the national

economy that claimant could perform.  (Tr. 26).  As such, the ALJ concluded that

plaintiff had not been under a disability from January 12, 2012, through the date of

his decision.  (Tr. 27).

    B.    <u>Plaintiff's Claims of Error</u>

        1.    Plaintiff's physical RFC is not supported by substantial
               evidence

Plaintiff claims that the physical RFC is not supported by substantial

evidence because the ALJ improperly relied on his own raw interpretation of the

medical evidence despite plaintiff's significant physical impairments.  (Dkt. 11, at

Pg. ID 574-78).  Plaintiff claims that the ALJ relied upon no opinion evidence and

even rejected what he perceived to be opinion evidence from plaintiff's treating sources, yet he crafted a very specific physical RFC. Plaintiff maintains that this was error and that the ALJ was required to obtain opinion evidence from a qualified medical source to opine on plaintiff's physical limitations resulting from his lower back and knee impairments. "The administrative law judge is simply not qualified to interpret raw clinical data and diagnoses in functional terms." *See, e.g., Henning v. Colvin*, No. 3:13-cv-753-H 2014 U.S. Dist. LEXIS 123301, at *8 (W.D. Ky. Aug. 15, 2014) (citing *Higgs v. Sec'y of Health and Human Servs*., 880 F.2d 860, 683 (6th Cir. 1988)).

Here, plaintiff contends that the ALJ did not rely on any medical opinions when forming the basis for his physical RFC. The ALJ assessed two opinions, one from nurse practitioner, Janet L. Massoglia, N.P., who indicated that plaintiff always walks with a cane, can stand for only one hour, and can walk more than one quarter of a mile, but not for an entire mile. (Tr. 238). The ALJ rejected this opinion because Ms. Massoglia "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [plaintiff]." (Tr. 23). Plaintiff also says that the ALJ rejected Dr. Kevin Carnahan, D.O.'s opinion that he "should use cold packs to low back and have restful activity without bending, twisting, or lifting activity until follow up or improved." (Tr. 426). The ALJ rejected Dr. Carnahan's opinion because "It does not appear that this opinion was

supposed to be permanent." (Tr. 23). Plainntff argues that the problem with the ALJ's rejection of these opnions is that there are no other medical opinions in the record regarding plaintiff's physical limitations. As such, how was the ALJ able to develop such a specific physical RFC? For example, plaintiff asks, how did the ALJ determine the amount of time plaintiff can be off task, or that he can frequently handle items with his left upper extremity?

Plaintiff claims that he has significant physical impairments and the ALJ was required to obtain a medical expert opinion to assist in determining the impact of his limitations. *Guido v. Colvin*, No. 13-13520, 2014 U.S. Dist. LEXIS 135579, at *31-32 (E.D. Mich. Jul. 29, 2014); *Lindsey v. Comm'r of Soc. Sec.*, No. 12-12585, 2013 U.S. Dist. LEXIS 165779, at *20-21 (E.D. Mich. Sept. 26, 2013). For example, Dr. William R. Stetler, a neurosurgeon at the Ann Arbor VA Hospital, found that plaintiff had pain throughout his bilateral lower extremities, that he was tender to palpation of the midline spine and paraspinal muscles throughout, and that he walked with a cane in his right hand. (Tr. 350). On examination, Dr. Don Mascarenhas, with whom plaintiff consulted at the VA Hospital for pain, found plaintiff tender to palpation along the lumbar spinous process/posterior elements and parapspinals, with tight myofascial elements of the lumbar paraspinals and surrounding musculature. (Tr. 347). Plaintiff was also tender bilaterally over the SI joint. (Tr. 347). Dr. Mascarenhas also noted that

plaintiff's range of motion was limited in the lumbar spine with respect to flexion, extension, lateral rotation, and side bending.  (Tr. 347).  Plaintiff also exhibited pain with internal rotation of the legs, right greater than left.  (Tr. 347).  Plaintiff additionally had positive facet loading pain, and it was noted that he walked with a mildly antalgic gait when assisted with a cane.  (Tr. 347). In sum, Dr. Mascarenhas' assessment was that plaintiff's pain was "most consistent with myofascial tightness and tenderness and pain. There is some contribution from [the bilateral] SI joint dysfunction, mild lumbar facet arthropathy and mild hip [osteoarthritis]; however, it is difficult to make this diagnosis given his overwhelming pain during examination." (Tr. 347).

Dr. Carnahan also found that plaintiff "experiences low back pain with bending knees in supine position and appears to have increased pain (requesting assistance [][w]hen sitting up from supine position."  (Tr. 313).  Dr. Carnahan diagnosed plaintiff with acute chronic low back pain with L5-S1 degenerative changes and a bulging disc.  (Tr. 314).  Physical therapist, Jason Esponoza, stated: "At this point, due to patient's pain levels, I feel as though other interventions are warranted. I would recommend a consult to the pain clinic to assist with pain reduction prior to attempting further [physical therapy] sessions." (Tr. 265.)  Even plaintiff's treating psychiatrist, Dr. Kempke, noted that plaintiff's gait was slow and bent forward with a cane, and that he had difficulty rising from a chair.  (Tr.

7

451).  Finally, nurse practitioner Janet Warber's examination revealed that

plaintiff "walks with a cane, very antalgic, shifts positions–sitting/standing."  (Tr.

259).

Taken together, plaintiff argues that the ALJ erred when he considered this

raw data and did not rely on the expertise of a medical expert opinion in

determining plaintiff's limitations.

### 2.    The ALJ erred in assessing plaintiff's credibility

Plaintiff claims that the ALJ's credibility assessment is flawed because the

ALJ essentially cherry-picked parts of the record to find it inconsistent with

disability.  (Dkt. 11, at Pg. ID 579-80).  For example, plaintiff says that the ALJ

cites a treatment note from his physical therapist where he did not bring his cane

to the appointment; however, the treatment note also indicates "pt encourage to

use cane in [left] arm to assist with upright gait (did [not] bring in today however

will address in future visits)."  (Tr. 279).  Also, plaintiff takes issue with the fact

that the ALJ did not explain how plaintiff's ability to perform limited daily

activities would correspond with the ability to work an eight-hour work-day, five-

days per week.  Particularly because plaintiff testified to having "bad" days about

half of the week, where he needs to lie down.  (Tr. 49).  This is significant because

the VE testified that if a person with plaintiff's RFC and plaintiff's work

experience, age and education were off-task more than 10 percent of the work-day,

8

they would be unable to perform in the national economy.  (Tr. 66).   For these reasons, plaintiff argues that this matter should be remanded for a proper credibility assessment.

   3. The ALJ's hypothetical to the vocational expert is flawed

  Plaintiff argues that the ALJ cannot rely on the VE's testimony because the hypothetical that the ALJ used was flawed.  (Dkt. 11, at Pg. ID 580).  "An incomplete hypothetical . . . is not substantial evidence." *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 U.S. Dist. LEXIS 16052 at *17 (E.D. Mich. Nov. 28, 2011). When a VE's opinion is based upon an incomplete set of limitations, the opinion cannot serve as substantial evidence. *Hicks*, 2011 U.S. Dist. LEXIS 16052, at *15 (citing *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 844 (E.D. Mich. 2007)).  Plaintiff contends that the ALJ's errors in determining plaintiff's RFC and his credibility analysis render his Step 5 determination unsupported by substantial evidence.  Second, plaintiff contends that the ALJ relied upon an incomplete hypothetical question that did not include the physical limitations based upon medical opinion evidence despite plaintiff having significant back and knee impairments.  For these reasons, plaintiff argues that the matter should be remanded for the ALJ to proffer a proper hypothetical.

  C. <u>Commissioner's Motion for Summary Judgment</u>

   1. The ALJ properly determined plaintiff's physical RFC based

on substantial medical evidence

The Commissioner contends that the RFC is supported by substantial evidence, based on medical and non-medical evidence in the record. (Dkt. 13, at Pg. ID 594-600).

With respect to the treating source opinions in the record, the Commissioner argues that the ALJ gave nurse Massoglia's opinion "little weight" because he found that she "relied quite heavily on the subjective report of symptoms and limitations provided by" plaintiff and seemed to accept most of his allegations as true. (Tr. 23). In addition, the Commissioner contends that the ALJ discounted Ms. Massoglia's opinion where it predated plaintiff's alleged onset date of January 12, 2012. (Tr. 23, 345). The Commissioner points out that at the time plaintiff saw Ms. Massoglia, plaintiff was engaged in full-time work, which the VE stated was work that was "medium-exertion" as performed. (Tr. 25, 217).

Similarly, the Commissioner argues that the ALJ gave "little weight" to the October 22, 2012 opinion of treating physician Dr. Carnahan. (Tr. 23). Dr. Carnahan opined that plaintiff should have restful activity without bending, twisting, or lifting activity until follow-up or improvement. (Tr. 426). However, according to the Commissioner, these opinions were taken from plaintiff's urgent care visit, when plaintiff bent over to pick up a non-heavy box and felt a popping sensation in his lower back. (Tr. 23, 425-26). The ALJ noted that nothing in the

10

urgent care notes indicated that Dr. Carnahan intended the restrictions to be permanent and that they were generally inconsistent with plaintiff's medical record. (Tr. 23).

The Commissioner notes that although he gave little weight to statements by "treating" sources and did not rely on any one medical source in determining plaintiff's RFC, plaintiff "did not provide any medical opinion from the relevant time period that established any workplace limitations arising from his impairment[s]." *Woelk v. Comm'r of Soc. Sec.*, No. 13-12411, 2014 WL 2931404, at *6 (E.D. Mich. May 15, 2014) (emphasis in original). The regulations require that a claimant establish the existence of a disability. 20 C.F.R. § 404.1512(c) ("[The claimant] must provide evidence, without redaction, showing how [his] impairment(s) affects [his] functioning during the time [he] say[s] that [he is] disabled, and any other information that [the agency] needs to decide [his] claim."). The Commissioner contends that the fact that the ALJ did not cite to any medical opinion in formulating his physical RFC is not *per se* grounds for error. *Woelk*, 2014 WL 2931404, at *7. While the Commissioner recognizes that ALJ's should not rely on their own expertise in drawing RFC conclusions from raw medical data, "ALJs can make their own functional capacity determinations from the medical evidence when a claimant has little physical impairment." *Woelk*, 2014 WL 2931404, at *8 (quoting *Wyatt v. Comm'r of Soc. Sec.*, No. 12-11406,

11

2013 WL 4483074, at *16-17 (E.D. Mich. Aug. 19, 2013)).  The Commissioner

contends that the record in this case reveals that plaintiff had very little physical

impairments during the relevant period, such that the ALJ was capable of

rendering a common sense judgment about plaintiff's physical RFC based on

available treatment notes and plaintiff's reported abilities.  Plaintiff's MRI

findings revealed only minimal changes after the alleged onset date, and his

clinical findings were mild, overall.  Moreover, plaintiff has not provided any

medical source opinion that indicates that he had disabling limitations at any

point, or that would contradict the ALJ's RFC finding that plaintiff could perform

light work with additional physical limitations.  For these reasons, the

Commissioner contends that the RFC is supported by substantial evidence.

> 2.    Substantial evidence supports the ALJ's finding that plaintiff
>       was not entirely credible

The Commissioner contends that the ALJ conducted a thorough discussion

of the evidence in support of his credibility determination, including plaintiff's

daily activities, his complaints of pain, and the minimal treatment that he obtained.

(Dkt. 13, at Pg. ID 601-604).  Plaintiff points to an instance in the record where

the ALJ discounted his credibility regarding using a cane; however the

Commissioner points out that any error in this regard is harmless.  Indeed, whether

plaintiff needed to use a cane was only one factor that the ALJ considered in

making his credibility determination.  Moreover, although the ALJ questioned whether plaintiff needed a cane, he nevertheless included the use of a cane over distances in his RFC finding.  (Tr. 20).

With respect to plaintiff's daily activities, the Commissioner argues that the ALJ's credibility determination was supported by substantial evidence because plaintiff alleged disabling pain, but also testified that he could drive himself places, and perform all of his own personal care without difficulty.  In these circumstances, the Commissioner contends that plaintiff's daily activities are not consistent with his complaints of disabling symptoms and limitations.  Although plaintiff may argue that the ALJ should have considered evidence in a different manner, weighing conflicting evidence falls squarely within the ALJ's province, and the Commissioner avers that the Court should not disturb his sensible resolution of these conflicts. *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).

3.    The ALJ's step five determination is supported by substantial evidence as he properly relied on testimony from the VE

The Commissioner contends that the ALJ met his burden at step five of the sequential analysis because the hypothetical question need only include those limitations that the ALJ accepts as credible.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  Further, says the

13

Commissioner, plaintiff's argument on this point merely recasts his argument regarding the RFC finding, the credibility determination, and the ALJ's weighing of the evidence.  The Commissioner therefore asks this court to reject plaintiff's arguments on these points, and conclude that substantial evidence supports the ALJ's RFC, credibility findings and his weighing of the evidence.

D.    Plaintiff's Reply

Plaintiff argues in reply that this case is readily distinguishable from *Woelk*, and thus the Commissioner's argument that the ALJ was not required to obtain a medical source opinion is unavailing.  (Dkt. 14, at Pg. ID 611-615)  In *Woelk*, the Court discussed the "narrow rule" set out in *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008):

> The rule of *Deskin* potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence. The ALJ retains discretion to impose work related limitations without a proper source opinion where the medical evidence shows 'relatively little physical impairment' and the ALJ 'can render a commonsense judgment about functional capacity.'

Woelk, 2014 U.S. Dist. LEXIS 88727, at *20-21 (quoting *Kizys v. Comm'r of Soc. Sec.*, No. 10-25, 2011 U.S. LEXIS 122296, at *4 (N.D. Ohio Oct. 21, 2011)).

Plaintiff restates his severe physical limitations, including extensive back and knee

14

impairments. Specifically, the record reveals significant MRI findings (Tr. 358),

trigger point injections (Tr. 350), "overwhelming pain during examination" (Tr.

Tr. 348), walking with a cane and a "very antalgic gait (Tr. 261), strong narcotic

medications (Tr. 439), and numerous other instances where plaintiff's impairments

were significant.  Plaintiff argues that the ALJ does not have the expertise to craft

limitations resulting from plaintiff's back and knee impairments where even

plaintiff's physical therapist discharged him from physical therapy due to too

much pain.

Plaintiff again questions how the ALJ was able to arrive at such a

particularized RFC without a medical source opinion. *Guido v. Comm'r of Soc.

Sec.*, No. 13-CV-13520, 2014 WL 4771929, *12 (E.D. Mich. Sept. 24, 2014)

("While ultimately the RFC assessment is the purview of the ALJ, in all but

situations where 'the medical evidence shows relatively little physical impairment'

such that the ALJ can permissibly render a commonsense judgment about the

functional capacity even absent a physician's assessment, the ALJ must generally

obtain a medical expert opinion on the subject") (remanding so the ALJ could

obtain a proper medical opinion where there was not one medical opinion as to the

functional limitations from plaintiff's severe mental impairments, noting that an

episode of decompensation and consistent treatment with serious psychiatric

medications indicated the plaintiff suffered from more than a "relatively little"

15

impairment); *see also Lindsey v. Comm'r of Soc. Sec.*, No. 12-12585, 2013 WL 6095545, *8 (E.D. Mich. Nov. 20, 2013) (recognizing "there are situations" where the medical evidence shows little physical impairment, finding the instant case was not "so little impairment that the lay opinion of an ALJ could substitute for that of an expert medical opinion when formulating the RFC determination.").

Plaintiff also argues that he did provide opinion evidence from treating physician Dr. Carnahan who opined that he "should use cold pack to low back and have restful activity without bending, twisting, or lifting activity until follow up or improved." (Tr. 426). The ALJ however chose to not credit the opinion because "it does not appear that this opinion appears to be permanent." (Tr. 23). In sum, the plaintiff contends that the ALJ erred when he relied upon the raw medical evidence to determine the physical RFC and did not obtain a proper medical source opinion to determine plaintiff's limitations. Plaintiff asks the court for a remand so that a medical source opinion can be obtained. *See Berger v. Comm'r of Soc. Sec.*, No. 12-11779, 2013 U.S. Dist. LEXIS 116339, at *32-37 (E.D. Mich. July 23, 2013) (Hluchaniuk, M.J.) (remanding to obtain a proper medical source opinion where the ALJ, having rejected the only work function assessment from a treating physician, "apparently arrived at his RFC based on his own analysis of the medical evidence of record").

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

17

decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

18

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis

1.   The RFC Determination

The main issue in this case is the limited nature of medical opinions

22

regarding plaintiff's physical functional limitations. One treating physician, Dr. Kevin Carnahan, offered the following opinion regarding plaintiff's functional limitations: "[Plaintiff] should use cold packs to low back and have restful activity without bending, twisting, or lifting activity until follow up or improved." (Tr. 426). There was disagreement between the parties on whether the ALJ properly discounted this opinion as being outside of the relevant time period, however, Dr. Carnahan's opinion is dated October 22, 2012, which is within the relevant time period. (*Id*.) The Commissioner then indicates that the ALJ discounted the opinion because it "did not appear that this opinion was supposed to be permanent." (Tr. 23). The ALJ also discounted the opinion of nurse practitioner, Ms. Massoglia. The ALJ discounted this opinion concluding that "apparently [Ms. Massoglia] relied quite heavily on the subjective report of symptoms and limitations provided by the [plaintiff]."[1] (Tr. 23).

With these two opinions discounted, we are left with the circumstance of the ALJ interpreting raw medical data without the benefit of an expert medical opinion. Importantly, in weighing the medical evidence, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (quoting

---

[1] Plaintiff does not argue that Dr. Carnahan or Ms. Massoglia are primary treating physicians or that the ALJ violated the treating source rule. This court will therefore not address that issue herein.

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Accordingly, an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence. *Id.* (internal quotations omitted); *see also Bledsoe v. Comm'r of Soc. Sec.*, 2011 WL 549861, at *7 (S.D. Ohio Feb.8, 2011) (An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings.); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr.14, 2008) (The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record .). In other words, [w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay medical opinion for that of a treating or examining doctor. *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), adopted by 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC is reserved to the Commissioner.   20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at

24

*10 (S.D. Ohio Nov.4, 2009) (The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because [i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D.Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination.); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.).

The parties disagree over the application of *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp. 2d 908 (N. D. Ohio 2008). The Commissioner contends that *Deskin* should not apply because plaintiff has "relatively little physical impairments" while the plaintiff argues that the rule in *Deskin* should apply because he has presented extensive evidence of back and knee impairments and the ALJ erred in rendering a "commonsense judgment" rather than procuring a medical source opinion to determine the extent of his limitations. The court agrees with plaintiff.

25

Indeed, while discounting the medical sources who treated plaintiff, the only two medical sources who offered opinions on plaintiff's functional limitations, plaintiff also presented medical evidence which demonstrated that he was limited beyond the lay opinion of the ALJ.  For example, plaintiff presented significant MRI findings (Tr. 358), plaintiff also presented evidence that he had received trigger point injections (Tr. 351), evidence of overwhelming pain during examinations (Tr. 347), that he walked with a cane to ambulate and had a "very antalgic" gate (Tr. 259), and that he was taking strong narcotic medications (Tr. 248, 439).

Although ultimately a finding of no disability at step five of the sequential evaluation may be appropriate in this case, substantial evidence does not currently exist in the record to support the current physical RFC determination. The only functional physical limitations in the record are those pointed out by both parties and found in Dr. Carnahan's and Ms. Massoglia's records, which the ALJ discredits. There is also no physical RFC determination by a consulting physician. Thus, the ALJ's physical RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on his own independent medical findings. Under these circumstances, the undersigned concludes that a remand is necessary to obtain a proper medical source opinion to support the ALJ's physical residual functional capacity finding.

26

2.      Credibility & Step 5 Determination

Because the undersigned has concluded that a remand is necessary to obtain a medical source opinion regarding plaintiff's physical RFC determination, the ALJ will necessarily need to re-weigh the plaintiff's testimony against the new medical source opinion in making his physical RFC findings.  As such, the court will not examine the ALJ's credibility findings now.  Similarly, on remand, the ALJ will need to re-formulate his hypothetical questions to the vocational expert to be in harmony with the medical source opinion who will provide insight into plaintiff's physical limitations.  As such, the court will not opine on whether the ALJ erred at Step 5.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 11) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 13) be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be **REVERSED** and **REMANDED** for proceedings in accordance with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

27

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 14, 2015                         s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 14, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
